**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1315
_____

GIDEON ONCHIRI GEKARA,
                                             Petitioner

v.

ATTORNEY GENERAL OF
THE UNITED STATES OF AMERICA,
                                             Respondent

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A207-085-128)
Immigration Judge: Kuyomars Golparvar
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 25, 2017

Before:  SHWARTZ, COWEN and FUENTES, Circuit Judges

(Opinion filed  July 28, 2017)

_____

OPINION[*]
_____

---

[*] The disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Gideon Onchiri Gekara petitions for review of the Board of Immigration Appeals' final order of removal. For the reasons that follow, we will deny the petition for review.

Gekara, a native and citizen of Kenya, was admitted to the United States on or about August 4, 2016, as a nonimmigrant with an F-1 student visa. He failed to enroll in school as required and his status was terminated. On March 10, 2016, the Department of Homeland Security initiated removal proceedings, charging Gekara, pursuant to 8 U.S.C. § 1227(a)(1)(C)(i), for failure to maintain or comply with the conditions of his nonimmigrant status. Gekara conceded the charge and applied for asylum, withholding of removal, and protection under the Convention Against Torture. In his application, Gekara stated that he had been and would be harmed in Kenya on account of his political opinion and ethnicity. Gekara specifically feared harm because of his involvement in the Orange Democratic Party ("ODP") and because his family, members of the Kisii ethnic group, owned land in a Kalenjin-controlled area.

Gekara's sister Linet testified at his merits hearing that Gekara became active in the ODP in 2005. In 2006, he became the Deputy Director of Communications for the ODP's 2008 presidential candidate, Raila Odinga, who was running against Uhuru Kenyatta. Kenyatta was supported by the Kalenjin community, while Odinga was supported by the Kisii community. Gekara held that position for about seven months before he came to the United States to go to school. Kenyatta won Kenya's presidential election and a period of substantial violence followed. At some point, their father was arrested and held in custody for eight months and their mother was beaten. Around the

2

time of the 2007 and 2008 election, their parents received threatening letters from Kalenjins and then Kalenjins evicted them from their land. They were never given their land back or compensated, and Linet expressed her belief that, due to the longstanding ethnic conflicts in the area, her family would never be compensated by the Kenyan government. Linet further testified that their uncle was beaten by members of the Kalenjin community during the post-election violence. He subsequently died of injuries sustained during that beating. Their cousin was also killed by members of the Kalenjin community during the post-election violence. Their parents have been living in a displaced persons camp in Kisii territory. Linet stated her belief that if Gekara returns to Kenya, he would be killed because of his work for Odinga. She further expressed her concern that there will be violent clashes between ethnic groups during the next election cycle. Linet visited Kenya in 2015 and stayed in Nairobi without problem.

Gekara gave similar testimony. He also testified that he was never arrested in Kenya and never had any problems with the Kenyan government. Gekara was in touch with some of his ODP colleagues in 2007 but does not keep in touch with them any longer. He learned from other people that some of the people he knew from the ODP disappeared, others were killed. As the only son of his parents, he would have inherited the farm upon his parents' death. Gekara also expressed his belief that if he returns to Kenya he will be harmed or killed because he was active in ODM campaigning in a Kalenjin area and because Kenyatta's people want revenge on those who backed Odinga.

In support of his application, Gekara submitted background articles and reports regarding country conditions in Kenya and election-related violence, including the 2008

3

State Department Report on Human Rights for Kenya; and a report from the Kenyan Human Rights Commission, dated October 24, 2011, among numerous other items. The Department of Homeland Security submitted, in pertinent part, the State Department's 2015 Kenya Human Rights Report.

The Immigration Judge denied relief, determining as a threshold matter that Gekara was statutorily ineligible for asylum because he did not file his application within one year of his arrival in the United States. With respect to Gekara's withholding of removal claim, the IJ concluded that he did not meet his burden of proof to show that he suffered past persecution in Kenya. The IJ specifically found that the violence directed toward Gekara's parents, uncle, and cousin were not related to Gekara himself. The IJ further determined that Gekara did not meet his burden to prove that it was more likely than not that he would be persecuted on account of his Kisii ethnicity or his political opinion. While the IJ recognized that interethnic violence and discrimination is a problem in Kenya, and was so particularly during the 2007-08 election cycles, Gekara's assertion that the Kisii were particularly targeted for violence and that the Kenyan government ignored the needs of the Kisii population in particular was unsupported by evidence in the record. Instead, the evidence reflected violence limited to the 2007 and 2008 election term, sparked by Odinga's refusal to accept his election loss, and that the violence subsided when Odinga was appointed Prime Minister. The IJ found Gekara's assertion that upcoming elections would result in violence speculative, considering the fact that the 2013 election cycle did not involve an unusual amount of strife. The IJ found that, although the Kisii community might experience some degree of

4

discrimination on account of their ethnicity, the record did not support the conclusion that the Kenyan government targeted the Kisii people for harm or discrimination or was unwilling or unable to control groups that might persecute it. The IJ also determined that Gekara did not meet his burden to show that it was more likely than not that he would be persecuted on account of his political opinion, and further determined that he could live peacefully elsewhere in Kenya, outside of a Kalenjin-controlled area. Finally, the IJ denied Gekara's application for protection under the CAT for insufficient proof.

Gekara appealed to the Board of Immigration Appeals. The Board dismissed the appeal on January 23, 2017, agreeing with the IJ that Gekara did not meet his burden to prove his eligibility for withholding of removal. The Board agreed with the IJ's determination that Gekara did not establish that he suffered past persecution on account of his Kisii ethnicity, reasoning that an applicant cannot usually demonstrate past persecution based solely on harm inflicted on a family member, particularly where the harm was not inflicted as a means for targeting the applicant. The Board emphasized the fact that Gekara was not harmed, threatened, or arrested while in Kenya, that all of the events complained of occurred to other individuals after he left Kenya, and that he did not allege that the harm to his family members occurred because he was related to his family members or as a means to harm him. The Board also agreed with the IJ's determination that Gekara did not demonstrate a clear probability that he would be harmed in the future on account of being Kisii. The Board agreed that the evidence showed interethnic violence in Kenya in 2007 and 2008 but did not show that there was similar violence occurring in Kenya at the present time. The Board further agreed with the IJ that there

5

was insufficient evidence to establish that Gekara would be individually targeted for harm upon his return to Kenya for any reason.

Gekara has petitioned for review.  We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1).  In his brief, Gekara argues that he suffered past persecution on account of what happened to his family because he would have inherited his family's farm if it had not been confiscated; that the Board erred in concluding that he will not be harmed in the future on account of being Kisii and because of the upcoming presidential election; and that the Board erred in concluding that he waived his CAT claim.[1]

We will deny the petition for review.  Where, as here, the Board issues its own decision on the merits, we review the Board's decision and consider the IJ's decision only insofar as the Board deferred to it.  See Roye v. Att'y Gen. of U.S., 693 F.3d 333, 339 (3d Cir. 2012).  Administrative findings of fact are reviewed for substantial evidence. See Shardar v. Ashcroft, 382 F.3d 318, 323 (3d Cir. 2004).  We treat the agency's findings of fact as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B); see also Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992).

"[T]he Attorney General may not remove an alien to a country if … the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. §

---

[1] Gekara also argues that the Board erred when it did not remand his case back to the IJ for an explicit statement regarding his credibility.  Petitioner's Brief, at 8.  We disagree. Remand was not warranted given that the Board explicitly treated Gekara's testimony as credible.

6

1231(b)(3)(A). To qualify for withholding of removal, the applicant must show a "clear probability" of persecution. Immigration & Naturalization Service v. Stevic, 467 U.S. 407, 429 (1984). If an applicant demonstrates that he suffered past persecution on account of an enumerated ground, "it shall be presumed that the applicant's life or freedom would be threatened in the future in the country of removal on the basis of the original claim." 8 C.F.R. § 1208.16(b)(1)(i).

Substantial evidence supports the agency's determination that Gekara failed to prove that he suffered past persecution in Kenya where he testified that he was never personally harmed in Kenya, and the harm his family suffered in Kenya was not directed at him. In Cham v. Att'y Gen. of U.S., 445 F.3d 683, 693 (3d Cir. 2006), we recognized that, while harm to a family member may be relevant to an applicant's claim of persecution, an applicant cannot rely solely on the persecution of his family members to qualify for relief. Persecution of family members may be relevant where there "is a high degree of factual similarity between the applicant's claim and those of his family members, and where his claim of political persecution rests on that very familial relationship." Id. at 693. Here, however, Gekara's experience in Kenya is factually different than his family's experience and his claim does not rest on his family relationship. Gekara was in the United States at the time of the incidents which he claims amount to his past persecution, and, even when he was in Kenya, he admits that he did not suffer any harm and never had any problems with the Kenyan government. That he may not inherit his family farm because it was confiscated constitutes economic harm but it does not rise to the level of persecution. Only "the deliberate imposition of severe

7

economic disadvantage which threatens a petitioner's life or freedom" may constitute persecution, Li v. Att'y Gen. of U.S., 400 F.3d 157, 168 (3d Cir. 2005), and the record here does not compel the conclusion that potentially losing his inheritance constitutes a threat to Gekara's life or freedom.

Substantial evidence also supports the agency's determination that Gekara failed to establish a clear probability of persecution in Kenya on account of his Kisii ethnicity or political opinion. An applicant for withholding of removal may demonstrate a sufficient threat of future persecution by showing either that a reasonable person in his position would fear persecution because he would be individually singled out for persecution or because there is a pattern or practice in his home country of persecution against a group of which he is a member. See Huang v. Att'y Gen. of U.S., 620 F.3d 372, 381 (3d Cir. 2010). To qualify as a pattern or practice for purposes of withholding of removal, the persecution must be systematic, pervasive, or organized. See Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005).

The record does not compel the conclusion that Gekara demonstrated that he has a reasonable, individualized fear of persecution on any basis if returned to Kenya. The threatening notes that Kalenjins left for his family telling them to leave their farm do not establish that it is more likely than not that Gekara would be individually singled out for harm in the future on account of being Kisii. Gekara has not been in Kenya since 2006 and so we agree with the Board that there was insufficient evidence to establish that he would be individually targeted for harm upon his return for any reason. The record also does not compel the conclusion there is a pattern or practice of persecution of the Kisii in

8

Kenya. Substantial evidence supports the agency's conclusion that, while there is some interethnic violence in Kenya, Gekara's fear that future election cycles will result in similar violence is speculative and not supported by the record. The country conditions evidence Gekara submitted largely focuses on the period of time during and immediately following the 2007 and 2008 election cycle. The 2015 State Department report, on the other hand, stated that the 2013 general elections, which were the first under Kenya's new constitution, were generally considered free and fair and that the country did not experience the violent outbreaks of the 2007-2008 election cycle.[2]

Last, an alien seeking relief under the CAT must demonstrate that it is "more likely than not" that he will be tortured in the event of return to a designated country. 8 C.F.R. § 1208.16(c)(2). The applicant must show that the torture will be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. §§ 1208.18(a)(1); see also Silva-Rengifo v. Att'y Gen. of U.S., 473 F.3d 58, 70 (3d Cir. 2007) ("[A]cquiescence to torture requires only that government officials remain willfully blind to torturous conduct and breach their legal responsibility to prevent it."). We conclude that Gekara's CAT claim falls well short of satisfying this standard, whether or not the Board properly deemed it waived.

For the foregoing reasons, we will deny the petition for review. [3]

---

[2] Because we reach this conclusion we need not address the agency's determination that Gekara would be able to relocate to another part of Kenya.

[3] Petitioner filed a motion for reconsideration of the Court's June 5, 2017 order denying petitioner's motion for stay of removal which has been referred to the merits panel. In

9

light of this Court's decision to deny the petition for review, petitioner's motion for reconsideration is denied.